Joseph Dierks was convicted of three counts of transmitting a threat in interstate commerce after a jury trial. These three counts were based upon three tweets he sent to Senator Joni Ernst. He was subsequently sentenced to 72 months of imprisonment. On appeal, he challenges the sufficiency of the evidence, the jury instructions, and two evidentiary rulings by the District Court. I will address each argument in turn, beginning with the true threat argument. Since Watts, the Supreme Court and the circuit have held that whether a communication is a true threat is a question for the jury, and it must be established for a conviction under the statute. The government failed to prove that these were true threats, and alternatively, the failure to instruct on the definition of a true threat requires reverse and remand for a new trial. As indicated throughout the case law, it's been clear that this is something that must be submitted to the jury. Watts was a reversal, not because it was a dismissal for being unconstitutional, but reversal for the grant of an entry of a judgment of acquittal because it was not a true threat. Subsequent to Watts, Barkley, Floyd, and Mabee all analyzed the sufficiency of the evidence as to whether communication was a true threat. Other circuits, for example, cited in our brief, the Fourth, Seventh, and Tenth, have all held that whether communication is a true threat is a question for the jury that must be submitted to the jury. Here, the government relies on the recent Parker case to find that it's not something that's submitted to the jury, but in fact is something that requires a post-trial motion and that the judge makes a determination of after the fact. That's not what Parker held and requires, and even if it had tried to, it could not overrule all of the prior precedent from the circuit in the U.S. Supreme Court. Parker was just a question of- We found a case where the threat element, as defined by the Supreme Court as mandatory, was instructed, but the true threat distinction was not part of the instructions and there was a reversal. So, not from this circuit, Your Honor. The court in Wheeler in the Tenth Circuit cited in our brief did. That was pre-Alanis, but there was a question of a true threat and they reversed it for the failure to provide the true threat definition, but I'm not aware out of this circuit, no, Your Honor. But Parker did not reverse the failure to grant this instruction simply because the evidence was sufficient that it was a true threat. So, the court did acknowledge that appellate court says this court must do, should reverse to determine that a conviction complies with the First Amendment, but did not change how this argument is raised and how it's decided and determined by the jury. Here, the evidence is insufficient to establish that it was a true threat. A true threat is a serious expression of an intent to cause harm or injury. The jury instructions, as provided, did not explain this to the jury. What it is missing, based off the instructions that were provided, is one, the requirement that it is an objectively real threat, that it is serious. The instruction also missed the requirement that the knowledge that it could be viewed or would be viewed as a threat by a reasonable person. Those two aspects are missing, which are required for it to be finding a true threat, and the jury did not have to find. And it's not harmless on the failure to give this instruction, just due to the evidence and the weakness of the evidence. And also, it wasn't pointed out in the briefs, but in the deliberations themselves, the jurors asked for a dictionary, which we don't know why the jurors asked for a dictionary, but it would indicate that they were confused about the definitions of at least some words. By failing to give this true threat instruction as it was requested, the juries didn't have an idea of what it meant by threat. Is it something that needs to be serious, or could we just look at the plain words of what indicated and say it's a threat, even if we don't think it's serious? It's also not harmless because the tweets themselves were not like other cases where it was very clearly a threat. First off, the context that they're made, it's on social media. It's on Twitter. He's an individual who is just kind of what the media would call a tweet storm, just stating how he feels on social media. Well, that link in the one was pretty threatening. The link? Was it a link to a video? So there's a link to a video from Paris. I think it's from Paris with Love, what the court is referring to, where someone was shot in the head. Yes. But the tweet, it's combined with these tweets themselves that don't really make sense. They're kind of gibberish. It's not as direct and harsh as many other threats that come up in this context are. I want to, and for many of the same reasons, but for different reasons as well, the government failed to prove that the tweets were sent with knowledge that the communication would be viewed as a threat or for the purpose of issuing a threat. Again, a lot of the same reasons and that. Well, didn't the police visit with him before he sent some of these and basically tell him that the senator is feeling threatened? And then he tweeted again? He did, Your Honor. But still, looking at the actual communications themselves, I don't think they rise to the level that he knew it could be threatening, especially when you look at the tweet that was excluded, which I will hopefully get to in a minute, that this is just someone just expressing frustrations on social media. It doesn't rise to the level of knowing it could be viewed as a threat or would be viewed as a threat. And even in the later interview with Mr. Dirks, they came the first time and then when they came back the second time, they didn't ask him if he knew these would be viewed as a threat. They asked him if they knew these could be used as a threat, which is where that true threat concern comes in, where it must be required that the jury find that he knew it would be viewed by a reasonable person. When you just say, you know, it could be a threat, well, to who? Someone who's very sensitive or someone like Senator Ernst, who is an elected official, so has to be very concerned about her personal safety, maybe more so than someone else. So it's insufficient to establish that and also illustrates the problem with not giving the instruction as required under the case law in the First Amendment. I'll turn next to the question of the agent's testimony as to what Mr. Dirks meant in his tweets. This was improper lay testimony and requires a reverse and remand for a new trial. The agent was able to testify what he believed Mr. Dirks was saying with certain abbreviations, and he was also able to testify that all capital letters meant you're wanting to yell at a person. The government has clarified on appeal that they believe this is lay testimony. How should the government, what could the government have done with the realistic possibility, if there was anyone over 40 on the jury, that some of the jurors wouldn't know this stuff? How did they clarify it? You have to get a linguistic expert, some person who's also probably over 40 and never watches media, social media? So I think that they would either have to be an expert, but I don't, you know, I am not as familiar with social media and how things are used. I don't know if you could find an expert that could say when a person uses... Why do you have to have an expert? Because otherwise it's just an agent like here saying, here's what I believe he thinks, and that's a question for the jury. If there's no expert testimony that can explain it, then it shouldn't have that testimony. Unless he has someone that knows Mr. Dirks and says, well, I'm familiar with how he uses these words, and I'm familiar with what he means when he uses this expression, and here's what it means, and I was a part of the conversation. Yes, they could have potentially that person come in and testify, and that would fall under lay opinion testimony. But here it doesn't meet the requirements for lay opinion testimony, because he's not testifying based upon being a part of the conversation. He's not testifying by saying, oh, I know that Mr. Dirks wanted to use all capital letters because he wanted to yell at someone. He's just testifying like if he were a member of the jury and he were viewing it, here's how he would interpret it. And that is improper. And the strongest case for this is this Court's decision in Turner. And in that case, a confidential informant had testified based upon her observations of communications during a drug transaction. There the CI had testified what slang meant not based upon her as a participant in the conversation and her interactions and knowledge of the people that were in the conversation, but just based upon what she knew from the drug trade in general. That's exactly what happened here with Special Agent Irwin. He testified not based off of being a part of the conversation or his knowledge of Mr. Dirks. He testified based upon what I can gather these abbreviations mean based off text messaging with my children and looking things up on UrbanDictionary.com, which as we've argued is also potential hearsay problems in an attempt to backdoor get in hearsay. So it's not based upon personal perceptions. If you can say it's based on specialized knowledge, it would fall under that. How about a friend of Dirks who's called to testify and says, I tweet with him all the time and he uses these same symbols and here's what I think they mean. No, it would be an admission. It's not a hearsay. Here's what he told me it means. I think that would be a much closer case if not admissible because then it's based off of I'm conversing with this person. I know them. I know what they mean. Prior experience, this is what we're talking about. Yes, that could qualify. But just considering how broad social media and language is to have an agent who has no experience say, no, this is what he meant, is improper. I want to at least briefly address before I sit down. The district court erred in refusing to admit the tweet, Mr. Dirks' tweet, that he was nothing to be afraid of as this was admissible under Rule 8033. It was a statement of then existing state of mind. It was a statement of its intent, motive, or emotional condition. It wasn't after the fact. The government cites many cases where a defense attorney is attempting to get in a statement like post-arrest where someone then says, I didn't mean this or I didn't intend this. This is distinguishable just based upon how the alleged offense was committed and how the government presented its case. This wasn't like a single letter and then the defendant says, oh, I didn't mean that as a threat. This was a whole series of tweets, and the proposed tweet was in the middle of that where he is kind of going off about how he feels about Senator Ernst and the situation. So it's distinguishable from those cases that the government has cited and instead more similar to the Patrika case that we've cited and that it goes to what he was thinking and feeling and intending as the alleged offense was being committed. If there are no further questions, I will reserve the remainder of my time for rebuttal. Thank you. Mr. Baburch, sir. And may it please the court, counsel. I would like to start with the evidence. The evidence was not, as counsel stated, weak. The evidence in this case was strong, and as pointed out, this particular defendant was given clear warnings before the charged tweets were issued that what he was doing was threatening, if not criminal. He was, the Capitol Police had sent out the Waterloo Police Department to meet with him. His own mother testified in our case in chief and testified. She had warned him as well. He was on probation in state court for harassment. That was admitted under Rule 404B and is not challenged on appeal. And as the court alluded to, there was this video. And we had, in our case in chief, your honors, we had focused on the three charged tweets. The defense put on an affirmative case and wanted to show that there was a larger context for these tweets. And Judge Reed, over our objection, allowed the defendant that defense. And more tweets came in. And then in our rebuttal case, we put in some of the tweets. You're starting with the issue that I think is adequately covering the briefs and not addressing what are the troublesome issues for me. But go ahead. Well, I'm happy. And I'll move to, I'm happy to move to the instruction issue, for example. I would just say when it is said in the defendant's brief that these tweets weren't violent, I mean, this trial ended with the government playing this terrible John Travolta movie from Paris with Love that ends with a husband shooting his wife in the head with a firearm. On the issue of the jury instructions, I think there's an ‑‑ Why, did the court explain why it wouldn't separate or add to the use, to the element of threat, a description of a true threat? I don't even, forget about using the word true. Correct. Using the Supreme Court's formulation of the element the Constitution requires. Where in the record on appeal is the district court's explanation, if any, of the decision not to do it? There is no explanation. And the reason there is no explanation is, and we spent a lot of time in this brief, a lot of extra pages trying to explain the context for how this goes about. And I put the various iterations of the jury instructions in the addendum. And as this court knows, Judge Reed has a very particular procedure prior to trial that she goes through so that the issues are well joined and we don't have what we have exactly here, and that is a defendant complaining about a particular formulation of the instruction that is now preferred that wasn't given in the district court. And that's why plain error applies here. Wait a minute. What do you mean the instruction now preferred? What's that a reference to? Case law? This was all case law before that came after the instructions conference? Conferences? No, Your Honor. The judge gave an instruction that she had given in. There was a proposed instruction. She said this is my instruction. There was an objection in a counter-instruct proposal, and the judge gave hers. Yes. And the proposed instructions, there were some problems with them, but they at least got at this objectively serious and what the, you know, would-be-perceived issues. So the instruction. Why didn't the judge do that? We don't know. Well, no, the defendant here didn't ask the district court after the district court issued its proposed instructions for this phrase, the constitutionally loaded phrase, true threat. On the objective element, the defendant was fine with the word threat. However, what the defendant asked for was in what the government and the court had thought is the third, the mens rea element, what's required after Alanis, or what, I should say, satisfies the Supreme Court after Alanis. The defendant proposed this additional language that did have this serious expression language that is consistent with the law. However, it was embedded in this larger formulation of an instruction that was clearly wrong. I mean, it was saying that the government would have to prove the defendant knew a reasonable person would find it to be threatening, which we've quoted at length from the Third Circuit's decision on remand in Alanis, in which pretty much the exact same standard, which combines the subjective and the objective, was proposed, and the Third Circuit rejected it, and we would urge the court, to the extent that is preserved, to follow the Third Circuit. I don't understand your plain error. I mean, suppose they raised two separate objections. You say one is wrong, and therefore the other one is forfeited, and they wanted both parts of that instruction. You say, well, the reasonable person part was wrong and properly rejected, and then you say, therefore, the other part they asked for is forfeited. I don't understand. What's the theory of plain error that leads to that conclusion? Thank you, Your Honor. And if there's a case out there to the contrary, then there is. But I had always understood that you had to request the instruction you wanted. And in this case, the defendant, after the judge issued her proposed instructions, did not just ask for a true threat instruction that was You must request the instruction you want. Now, you have a problem if your requested instruction is inconsistent with the law, but you can object to an instruction without proffering your own. That is correct. Back to Judge Colleton's, why do you forfeit the second half? Yeah. I mean, she wanted this .3, right? I mean, Dirks wanted this written objection that I'm looking at, I think is the objection after the proposed instructions were filed. Is that what you're talking about? I'm talking about page 10 of our addendum, which is at docket 43, which was the defendant's objective. Yeah. Okay. So if you look at the point enumerated, number 3, right? We're talking about what a threat is. That's right. All right. So he wanted to say a threat is a serious threat, da-da-da-da-da, and then when you get into the intent element, he wanted to add the reasonable person part. And you're saying the reasonable person part is wrong and was properly rejected, but he also asked for the first part of that. And I'm just saying I question whether he's forfeited asking for the first part because the second part is wrong. So do you have an argument on the merits of the first part, assuming it's preserved? Yes. And I would just stand on our briefing in the sense that this instruction is wrong, taken as a whole. Now, on appeal, the defendant has parsed out part of it. Yeah. But if the defendant alerts the judge to, I mean, what you're saying is they've got to make separate objections for each part of the instruction they don't like, otherwise they forfeit by combining their objections with some that might be incorrect. Our point is that a district judge in the heat of trial or the days preceding it is not required to slice and dice a defendant's proposed instruction and divine out of it parts of it that might be correct and parts that aren't. All right. We'll consider that. She did raise the issue here. So assuming it's preserved, why wasn't the judge required to use this definition of threat? So thank you, Your Honor. And I think this is where I spent a lot of time thinking about this. And the point I think it all comes down to at the end, is there daylight between the instructions as given, which were intended to be consistent with Alanis, and on the other hand, a possible First Amendment defense or a certain First Amendment as applied challenge to Section 875C. And the answer to that is we don't believe there is, given how these were phrased. Alanis, of course, wasn't a First Amendment case. Alanis said, we're going to read a mens rea into this statute that otherwise doesn't have one on its face. And Alanis didn't tell us what the minimum mens rea would be, but Alanis told us that intent to threaten or knowledge that the recipient would perceive the message as threatening would be sufficient. And the way these jury instructions were crafted is there was an objective element and there was a subjective element. And the objective element, whether there was a threat, allowed the defendant to argue, just as is put forward here on appeal, that he was, I think the words of defense counsel at trial were, he was an internet troll. He was somebody who lived in his basement doing a tweet storm, and he didn't have the sort of intent. And the jury resolved that objective question against the defendant. And there was a question about the dictionary, but I don't think this court can infer anything from the fact they asked for a dictionary. We don't know what they wanted to read in the dictionary. And to the extent the jury deliberations matter, the jury wasn't out long on this one. With respect to the subjective element, though, after Alanis, when we read in the mens rea now, that would seem to take care of all these sorts of constitutional concerns, because the constitutional concern of a true threat, for example, with these magic words, true threat. And the judge in her discretion used the word threat, consistent with a prior case where the defense counsel and the judge were the same. I'm aware that doesn't take care of the Supreme Court's First Amendment jurisprudence that says it has to be unprotected speech. That seems to be a predicate of Alanis, like it or not. But the question is, what does that mean? The Supreme Court has told us what unprotected threat means. It was not contained in this instruction. But the words true threat weren't. The words serious expression were not. But the jury made a finding that this defendant intended to do, he intended to make an expression of harm. And he knew that what he said. Wait a minute. Where is that in the instruction? The third, I suppose. The third. He doesn't say expression of harm. And I apologize if I didn't say it. That the defendant intended the communication to be threatening and or knew it would be so viewed. And or knew it would be considered threat. That's correct, Your Honor. That was a very late change in the instruction. That's correct. But. Don't you have the final instruction there? I do. It's in my addendum. I had just turned to the wrong page. I apologize, Your Honor. It's page 12 of my addendum. The defendant intended the communication to be threatening. Page 9. It's not instruction. Your addendum is horribly. Oh, I see. 9 is the first. 12 is. Page 12 is the. We got count 3 and count 2. Is it the same instruction? We, in our addendum, we attempted to reproduce a sample instruction for, you know, there were three tweets. And so, potentially, there were three instructions. So we just put one of them in here. Wait. A sample? You've got count 3. You've got count 2. You've got addendum 9, addendum 12. I thought these were, they appear to be identical. But I'm just focusing on them for the first time. These are not samples. If they're samples, where did they come from? No, I didn't mean in the sense of a sample.  The instruction on page 12 of the addendum is the instruction that was given. What about page 9? What's that? Page 9. And this goes back to the procedural point. Page 9. It says instruction number 13 at the top. And it refers to the crime charged in count 3. Wasn't that also given? No. Page 9 of the addendum goes with page 8. Page 8 was the judge's order saying this is your last chance to take a look at my proposed instructions. Page 9 was one of those proposed instructions. It looks a lot like a final jury instruction. It was intended to be. But the judge then, in light of the party's objections, went to page 12. So there's a different tweet. There's a different tweet on page 12. I assumed it was a different count of the indictment. No. There were three tweets and three proposed instructions and three final instructions. And for the addendum, I had picked one of each. So I didn't have enough space in the addendum. And so I picked different counts. And I apologize if that was confusing. I don't think you're describing them correctly. They're identical in language except for the text of the tweet. No, Your Honor. I think as Judge Carlton pointed out, the third element, the judge slightly changed from page 9, the wording of that last phrase for each of the three what I would call marshalling instructions. And or knew it would be considered threatening. That's identical. Well, anyway, do you want to address whether this is consistent with the First Amendment? Thank you for the additional time, Your Honor. Well, it's not my time. I am out of time. You may always answer a question. Thank you. Again, coming back to the original point, the district court in Parker had basically noted what I'm trying to argue here. And that is after Alanis, when there is a mens rea requirement, that the First Amendment analysis and the statutory analysis essentially collapse. And again, the defendant in the district court. What case says that? The district court in Parker and the Eighth Circuit in Parker affirmed the decision not to give a First Amendment instruction. And that is the post-Alanis Eighth Circuit case. And it was not plain error for the district court to not instruct the jury on a First Amendment defense that had been abandoned. We're talking about whether in the elements of the crime, the element has to be phrased in a way that accommodates the First Amendment. That's different from asking for a separate First Amendment instruction. So if the defendant says in order for this crime, you know, the statute to be constitutional, the elements have to require certain proof, then that could be just in the instruction, the marshaling instruction, couldn't it? It could. But again, the defendant did not request such an instruction. And the court, the judges. It's the absence. At best, at best, the district court, the defendant had asked for an instruction that defined threat to mean not a joke. A threat is a serious threat, not idle talk. Right. But again, that was embedded in an erroneous formulation of the Alanis Mens Reis standard. I'm trying to get my mind around this as well. But are you saying that if the jury found under the jury instruction that the defendant intended to communicate a threat, that it was intended to be threatening or that he knew it would be considered, that that necessarily takes it out or inserts it into the constitutional true threat? Is that the argument here? That is the argument. At bottom, when we get down to brass tacks, that's exactly what I'm arguing. So no matter how jocularly it's phrased. Because at the end of the day, if you made a threat, if the jury found he made a threat, the jury found he intended to threaten Senator Ernst with respect to two of the tweets and with respect to all three, the jury found he knew it would be viewed as threatening by the recipient. That is not protected speech. I thought he was just asked if it could. I thought he just said it could be. He knew it could be. The jury found it would be. He was asked by FBI agents if it could be, and he admitted. And one of the arguments I made to the jury was could becomes would very quickly. You can infer from his admission that he knew it could be, that he would be, and the defense counsel pushed back on that. Okay. Thank you. I'd ask that the court affirm the defendant's conviction. So Parker didn't address whether the Alanis decision itself gets rid of every First Amendment concern. And in the Fourth Circuit in the White case that's cited in my brief, there the court stated that Alanis doesn't alleviate or get rid of the need to instruct the jury on the definition of true threat. In fact, in Alanis under 875C, they said there's two requirements. What the statute requires is determined under Alanis, the intent requirement, and also what constitutional avoidance principles demand, that it be a true threat. So the instructions as given under Alanis weren't sufficient to make sure that this complied with the First Amendment. What's the problem specifically? There's two problems. The first is that it doesn't ensure that it's serious. Something could be a threat. For example, I could get on social media and say, I'm going to kill my husband because he keeps leaving his socks on the floor. That is literally a threat. But is it serious? No. Well, is it intended to be threatening or would it be considered a threat about the socks? I mean, that doesn't fit under the jury instruction cleanly. I mean, that strikes me as outside the bounds of the jury instruction that was given here. The instruction, and this is where the failure to include the reasonable person language is problematic, and our position is that it's not improper. Alanis didn't say the reasonable person standard is no longer necessary, but knew it would be viewed as a threat. Well, it's literally a threat. It's literally something harmful. But is it a reasonable person reading on social media? Would they say, well, yes, this would be viewed as a serious threat to cause bodily injury? No. And where does the serious term come from? So that comes from, I believe, Watts. If not, I know maybe this court's case discussed a serious expression of a threat of bodily harm. So it's our position that the instruction as requested, including both the reasonable person language and the need that it actually be serious, both are proper and both were required to ensure that Mr. Dirks' convictions did comply with the First Amendment, and it was for the jury to make that determination. If there are no further questions, I would ask that this court either vacate the convictions for insufficient evidence or alternatively reverse and remand for the jury instructions and evidentiary issues discussed in the brief stand today. Thank you. Thank you, counsel. The case has been thoroughly briefed and argued. We will take it under advisement.